NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0343n.06

Case No. 25-3239

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jul 29, 2026

KELLY L. STEPHENS, Clerk

| | |
|---|---|
| TAMMY W. RUSSELL, | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| U.S. DEPARTMENT OF THE TREASURY, | ) |
| Defendant-Appellee. | ) OPINION |

Before: DAVIS, MATHIS, and RITZ, Circuit Judges.

DAVIS, J., delivered the opinion of the court in which RITZ, J., concurred. MATHIS, J. (pp. 6–10), delivered a separate dissenting opinion.

DAVIS, Circuit Judge. Plaintiff Tammy Russell appeals the district court's grant of summary judgment in favor of Defendant Department of the Treasury on her claims of disability discrimination and retaliation. But the Department says that Russell settled her claims and released it from liability, so we should dismiss this appeal based on an agreement that the parties entered after the filing of this appeal. Because the existence of an agreement resolving the parties' dispute implicates questions of our jurisdiction, we find that the district court should decide this issue in the first instance, so we remand.

I.

This appeal stems from Plaintiff Tammy Russell's employment as a revenue officer with the Internal Revenue Service (the "IRS"), a bureau within the Department of the Treasury.

Russell sued the Department, alleging age discrimination, disability discrimination, and retaliation. The Department moved for summary judgment, which the district court granted. Russell now appeals the district court's grant of summary judgment only as to her disability discrimination and retaliation claims.

Procedural issues complicate our ability to review Russell's claims. So a brief overview of the parties' path to this court is useful. The district court entered its order granting the Department summary judgment and terminating the case in March 2025. Russell timely filed her notice of appeal about a month later. And a little more than two weeks after that, Russell entered into a Deferred Resignation Program Agreement (the "DRPA") with the IRS. Under the DRPA, Russell would be placed on paid administrative leave through September 30, 2025, on which date she would then tender her resignation and her employment with the IRS would end. The DRPA also provided that Russell would not be required to perform any work while on administrative leave, but she would continue to receive her salary and benefits. And it stated that "[b]y signing this agreement, the parties acknowledge that they have entered the agreement knowingly, voluntarily, and free from improper influence, coercion, or duress." (ECF 29, Ex. A, ¶ 10). Further, under the Agreement's terms, Russell could not "rescind this agreement, except in the sole discretion of the Bureau Head," and any such decision would not be subject to review. (*Id.*). Finally, the DRPA included a release provision declaring that Russell waived "any and all claims that were or could have been brought" against the IRS concerning her employment or separation. (*Id.* at ¶ 13). She would also need to "immediately withdraw any and all . . . appeals . . . that . . . she may have filed in any forum against the Bureau, its officers, employees or agents, arising out of . . . her employment with the Bureau, as of the effective date of this Agreement." (*Id.*).

II.

The Department now seeks to enforce the DRPA and asks us to dismiss Russell's appeal because she released all claims against the IRS when she entered the DRPA. A settlement can moot an appeal if it extinguishes the parties' personal stake in the litigation. *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009). "The mootness doctrine requires that there be a live case or controversy." *Patton v. Fitzhugh*, 131 F.4th 383, 392 (6th Cir. 2025) (citation modified). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (citation modified).

So, if the DRPA is a valid and enforceable agreement, and Russell forfeited her right to proceed with her claims, then this appeal would be moot. Because mootness is a jurisdictional issue, which we may raise *sua sponte*, we start and end our analysis there. *See Aaron v. O'Connor*, 914 F.3d 1010, 1015 (6th Cir. 2019).

When assessing whether a case has become moot, we may consider facts outside of the record. *See Bd. of Educ. v. A.A.*, No. 18-6166, 2019 U.S. App. LEXIS 16569, at *6 (6th Cir. May 31, 2019) (order) (citing *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 282–83 (2001)). If the parties do not dispute those new facts, we may decide in the first instance whether the case is moot. *Id.* If, however, the parties dispute the new facts, we "remand[] for the district court to consider the mootness question in the first instance (and to make any necessary fact findings in the process)." *Id.*; *see KNC Invs., LLC v. Lane's End Stallions, Inc.*, 504 F. App'x 467, 468 (6th Cir. 2012).

Here, Russell challenges the finality of the DRPA, arguing that the Department's request for dismissal on this basis is not ripe because the Bureau Head has not yet ruled on her request to

rescind the DRPA. She also challenges the validity of the Agreement, arguing that she did not enter the Agreement knowingly and voluntarily because the "execution of the [DRPA] was prompted by her anxiety and PTSD." (Reply, ECF 48, 2). The Department, on the other hand, argues that Russell acknowledged, under the terms of the DRPA itself, that she was entering the Agreement "knowingly, voluntarily, and free from improper influence, coercion, or duress." (Appellee's Br., ECF 42, 23 (citation omitted)). It also argues that the letter from Russell's psychiatrist, which Russell apparently submitted to the IRS in support of her request for a rescission of the DRPA, is insufficient evidence to support a mental capacity defense.

Given that factual disputes remain, we remand to the district court to determine in the first instance whether the DRPA is an enforceable agreement rendering Russell's claims moot. *See Little Mountain Precision, LLC v. DR Guns LLC*, Nos. 25-3474/3488, 2025 WL 3896357, at *2 (6th Cir. Nov. 6, 2025) (order). Granted, the Department has indicated that it is willing to abandon its request for dismissal should we determine that a dispute of fact exists. (Appellee's Br., ECF 42, 26–27). With a question of our jurisdiction having been raised, however, we cannot so quickly set the issue aside.[1] Indeed, before proceeding on the merits, an appellate court must "satisfy itself

---

[1] The dissent opines that this case does not present a mootness issue and cites *Chafin v. Chafin*, 568 U.S. 165 (2013), and *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288 (2023) for support. But those cases addressed a different issue; they each grappled with an attack on the legal availability of the substantive grounds for relief. They did not determine that the plaintiff had lost their stake in the outcome. For instance, *Chafin* centered on whether the court had legal authority under the Hague Convention and the International Child Abduction Remedies Act to provide a specific remedy—to return a child to the United States—after the petitioner's spouse took his child to another country. 568 U.S. at 174. And similarly, *MOAC* hinged on whether the Bankruptcy Code provided a specific kind of remedy—there, the undoing of a lease transfer—after a debtor had waived its right to avoid a lease transfer. 598 U.S. at 295. Here, the mootness inquiry does not stem from any question about the reach of the substantive law on which Russell relies for relief.

Instead, the relevant question is whether, as a factual matter, Russell entering into the DRPA "extinguished" her personal stake in the litigation by validly "bargain[ing] away all of [her] interests via a negotiated settlement" such that no live claims exist for us to resolve. *Pettrey*, 584 F.3d at 706; *see Garton v. Crouch*, No. 23-6002, 2024 WL 3569520, at *3–4 (6th Cir. July 29, 2024). As explained by the Supreme

. . . of its own jurisdiction." *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 428 (2026) (citation omitted).

III.

For the reasons stated, we remand.

---

Court, a case becomes moot if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *L.A. County v. Davis*, 440 U.S. 625, 631 (1979). And we have clarified that "settlement agreements qualify as the types of interim relief or events that may 'deprive the court of the ability to give meaningful relief' and render a case moot." *Columbia MHC E., LLC v. Stewart*, 815 F. App'x 887, 890 (6th Cir. 2020) (quoting *Sullivan*, 920 F.3d at 410). So, we decline to weigh in on the dissent's merits analysis in favor of first satisfying ourselves of our jurisdiction to do so.

**MATHIS, Circuit Judge, dissenting.** Tammy Russell sued her employer, the U.S. Department of the Treasury, alleging that it discriminated and retaliated against her. The district court granted summary judgment to the Treasury Department, and Russell appealed. While her appeal was pending, she entered into a deferred resignation agreement with the Treasury Department. Although the agreement is not a settlement agreement, it nevertheless contains a term requiring Russell to release any pending claims against the Treasury Department. I agree with the majority opinion that the validity of the release presents a question of fact that we cannot answer on the record before us. But that factual question does not pose an obstacle to our jurisdiction, so I would reach the merits of Russell's claims and affirm the district court's judgment.

**I.**

Russell has worked within the Treasury Department for the Internal Revenue Service since 2000. *Russell v. Lew*, 549 F. App'x 389, 390 (6th Cir. 2013). For the past two decades, she has worked as a revenue officer in Columbus, Ohio. And for at least two of those years, Kenneth Slavkovsky was her supervisor. Russell alleges that Slavkovsky discriminated against her because of her disabilities—anxiety, depression, and post-traumatic stress disorder—and retaliated against her when she complained about the mistreatment.

Russell cites seven incidents to support her claims. Those incidents are: (1) Slavkovsky mailed her a copy of her annual performance review while she was on an extended medical leave of absence; (2) Slavkovsky denied her 2017 request for advanced sick leave; (3) the Treasury Department denied her request for a telework schedule and reduced work load; (4) Slavkovsky asked the chapter president of Russell's union to accompany them on a supervised field visit; (5) Slavkovsky asked a union representative to witness Russell's midyear performance review;

(6) Slavkovsky sent Russell a written notice after she teleworked without permission; and (7) Slavkovsky denied Russell's 2018 request for advanced sick leave.

Based on these incidents, Russell filed suit against the Treasury Department alleging discrimination, in violation of the Age Discrimination in Employment Act, and disability discrimination and retaliation, in violation of the Rehabilitation Act. The district court granted summary judgment to the Treasury Department. Russell appealed, challenging the district court's rejection of her disability-discrimination and retaliation claims.

About two weeks after she filed her notice of appeal, Russell entered into a deferred resignation agreement with the Treasury Department. Relevant here, Russell "agree[d] to immediately withdraw any and all . . . appeals . . . that . . . she may have filed in any forum against the [Treasury Department], as of [April 18, 2025]." D. 26 at p.5.

Despite agreeing to release her claims, however, Russell has not done so. Rather, she argues that she lacked capacity to execute the agreement.

## II.

The Constitution restricts our judicial power to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2. A case or controversy exists when a litigant's injuries are "likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). This redressability requirement "subsists" at the appeal stage. *Id.*

Federal courts lack jurisdiction to decide moot cases. A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation modified). But that happens "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation omitted). A "case remains live as long as

the parties have a concrete interest, however small, in the outcome of the litigation." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023) (citation modified).

A litigant can still have a legally cognizable interest in the outcome of her case even when there is doubt about the legal availability of the relief she seeks. *See id.* at 295–96; *Chafin*, 568 U.S. at 173–76. This is because our ability to grant relief is a separate question from a litigant's ability to enforce it. *MOAC*, 598 U.S. at 295–96. In that sense, mootness arguments addressing "the legal availability of a certain kind of relief" are not mootness arguments at all—rather, they address the "merits" of the plaintiff's claims. *Chafin*, 568 U.S. at 174. And so long as the plaintiff presents a plausible argument that relief is legally available, we have jurisdiction over her case. *Id.*

The Treasury Department argues that the release in the deferred resignation agreement mooted Russell's claims. But this is the same kind of mootness argument that the Supreme Court "disfavor[s]" because it goes to "the legal availability" of relief and thus "confuse[s] mootness with the merits." *MOAC*, 598 U.S. at 295–96 (quotation omitted). The Treasury Department admits as much, requesting that we affirm on the merits even if we spot a factual dispute about the validity of the waiver.

The majority opinion, however, views the release as a jurisdictional obstacle. But I do not view the Treasury Department's "waiver argument as raising a jurisdictional defect that we must resolve before reaching the merits." *See United States v. Duplessis*, No. 22-1511, 2023 WL 6926859, at *2–3 (6th Cir. Oct. 19, 2023) (citation modified). We can still grant Russell the relief she seeks by reversing the district court's judgment and reviving her claims. *See MOAC*, 598 U.S. at 296. Whether Russell agreed to release those claims is a separate legal question. *See id.* at 295–96. Because Russell's argument that she lacked capacity to release her claims is "not so

implausible that it [is] insufficient to preserve jurisdiction"—indeed, it is plausible enough to create a factual dispute—Russell's "prospects of success [are] therefore not pertinent to the mootness inquiry." *See id.* at 296 & n.4 (citation modified). So I would resolve the appeal on the merits.

**III.**

Russell asserts that the Treasury Department discriminated and retaliated against her in violation of the Rehabilitation Act. The district court granted the Treasury Department summary judgment after concluding that Russell failed to establish a disability and failed to show a causal connection between any protected activity and the alleged retaliation. But both of her claims fail on another front: she also offered no evidence that the Treasury Department's legitimate reasons for its actions were a pretext for either discrimination or retaliation. *See EEOC v. Ferrellgas, L.P.*, 97 F.4th 338, 350 n.7 (6th Cir. 2024) (recognizing that we can "affirm . . . on any grounds supported by the record, even if different from those relied on by the district court" (quotation omitted)).

Because Russell relies on indirect evidence of discrimination and retaliation, the *McDonnell Douglas* burden-shifting framework applies to both claims. *See Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 581, 587 (6th Cir. 2022). Under that framework, Russell's burden of proof extends beyond the prima facie stage. *See id.* Even if she could present a prima facie case of discrimination and retaliation, the burden of production shifts to the Treasury Department to present nondiscriminatory and nonretaliatory reasons for its actions. *See id.* If it does so, the burden shifts back to Russell to show that the Treasury Department's proffered reasons are pretextual. *See id.*

As the Treasury Department points out, it presented legitimate reasons for all seven of the challenged actions: (1) Slavkovsky mailed Russell her performance review while she was on leave

because the union contract required him to do so; (2) Slavkovsky denied Russell's 2017 advanced-sick-leave request because her pending disability-retirement application created doubt that she would be able to earn the leave advanced to her; (3) the Treasury Department denied Russell's request for accommodations after determining that she was not eligible to telework and already had a reduced workload; (4) Slavkovsky requested that a union representative attend the field visit because Russell asked for her union's presence at every meeting with management; (5) Slavkovsky again requested that a union representative witness Russell's midyear performance review because Russell asked for her union's presence at every meeting with management; (6) Slavkovsky issued the written directive reprimanding Russell for working from home because she did not obtain permission to do so; and (7) Slavkovsky denied Russell's 2018 advanced-sick-leave request because she failed to provide sufficient documentation to support her request.

In the face of these legitimate, nondiscriminatory reasons, Russell produced no evidence of pretext. She neglected to address pretext below, nor does she address it on appeal. That "dooms" her claims. *Salekin v. McDonough*, No. 23-5849, 2024 WL 3221161, at *2 (6th Cir. June 28, 2024); *accord Patterson v. Kent State Univ.*, 155 F.4th 635, 647 (6th Cir. 2025).

**IV.**

I would affirm the district court's summary-judgment decision. Because the majority opinion concludes otherwise, I respectfully dissent.